The material facts of this case are that Thomas Davis by his will, which was admitted to probate in the year 1722, bequeathed a female slave, of the name of Sarah, to his daughter, Frances Williamson, during her life, and after her decease, the wench and her increase to be equally divided among the children of Frances. Frances had six children, one of whom, William, removed into this State and died (361) in 1768, leaving a widow and nine children, George being his eldest son.
Afterwards, in the beginning of the year 1769, Frances died; upon which the issue of Sarah were divided, under the authority of a Court of Chancery in Virginia. A sixth part was allotted to George, as the heir-at-law of William; this was received by his guardian, and afterwards, upon his arriving at full age, brought into this State by himself; until which time all the negroes descended from Sarah had remained constantly in Virginia. George died in the year 1780, leaving a widow *Page 303 
and child, who possessed themselves of the negroes, which they have retained ever since. The widow of William administered upon her husband's estate, and afterwards intermarried with Peter Cox, who, together with his wife, hath brought the present suit to recover the negroes as of the goods and chattels of William; having previously demanded them of the defendants, one of whom defends as administrator in right of his wife, to George Williamson, and the other as guardian to George's child.
From these facts two questions arise: One is whether the division made in Virginia ought not, as far as it respected the share claimed through William, to have been according to the laws of this State, whereof William before and at the time of his death was a citizen and inhabitant. The other is whether, upon the supposition that the division was improperly made, the decree directing it is not conclusive as the sentence of a court of competent jurisdiction.
As to the first, I consider it perfectly clear and well settled that although the descent of lands is to be regulated according to the law of the country wherein they are situated, yet the succession and distribution of movable property is to be guided by the law of the country where the owner has his domicile. This is a principle of the law of nations, which has been recognized and sanctioned by a variety of adjudications. 2 Vesey, 35; Ambler, 25; 4 Term, 184, etc.; Bl., 131, 437, 691; Ld. Kaimes, 274; Vattel, b. 2, c. 7, s. 85; c. 8, s. 109, 110. I can entertain no doubt that these authorities must be approved and acted on by the courts of this State, upon an application to distribute the effects of a foreigner, if made within due time; and that they would (362) receive evidence of the law according to which the distribution was sought. I do not indeed recollect any decision upon this point in our own courts; but my opinion is founded no less upon the weight and number of the cases than upon the intrinsic justice of the principle which pervades them. It seems also to acquire strength in its application to the United States, from the nature of their political relations, which are calculated equally to cherish a spirit of friendly intercourse among their respective citizens, and to promote in each state a respectful deference to the laws of all.
The court of Virginia would without doubt have given effect to the claims of the other parties concerned, unless there be some law of that state expressly to prevent it. The existence of such a law, however, cannot well be imagined, because there can be no reason wherefore that state should be concerned about the manner in which strangers hold that sort of property, which they may freely carry away with them. All that, as a state, they can be interested in ascertaining is whether the party asserting a claim has really a right, according to the laws of his *Page 304 
own country; and whether those laws vest a chattel in one person or direct its division among twenty, they equally merit respect and observance. Therefore, if in the State of Virginia this property is clothed with some of the qualities of real estate — if like that it is made descendable to the heirs at law, and exempted form the payment of debts, where there are sufficient assets without it, so far as its nature is changed; put in all other respects it remains and must be considered as chattel property; and the local policy which hath thus distinguished it must necessarily confine the operation of the laws respecting it to the citizens and inhabitants of that State. This must be understood, however, in relation to the laws ascertaining the right, and not those prescribing the remedy. The latter must, from their nature, bind equally strangers and citizens. Slaves being then chattel property, notwithstanding (363) incidents annexed to it applicable only to the citizens of that state, there is a conflict of laws in the two states relative to them; and in every such case the laws of the country where the owner resides must prevail. Secondly, the order made by the Court of Chancery in Virginia relative to this division cannot be conclusive as to the title of the negroes in question. Of the persons claiming a right under William, George alone was party to the suit in which it was pronounced. The other children and the widow of William were neither parties nor privies, nor was there any person before the court interested to protect their rights, or even to disclose them. Had the distribution been among all, George's share would have been so much less, and therefore he was interested to keep their pretensions out of view. Besides, the points now in contest were not decided upon the former occasion. The only question then was whether the property should be divided into six equal shares, in which, no doubt, all the parties concurred; the question now is whether the widow and children shall share with George the sixth part he received. The present plaintiffs, therefore, and those for whom they claim, have never been heard, their rights have never been asserted; and, under such circumstances, it is contrary to natural justice and to the law both of Virginia and this State that they should be concluded by the decree. My opinion is, consequently, in favor of the plaintiffs.